UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NIKOLAY LEVINSON,

                *Plaintiff,*

– against –

UNITED STATES OF AMERICA,

                *Defendant.*

**MEMORANDUM & ORDER**
23-cv-04853 (NCM) (LKE)

**NATASHA C. MERLE**, United States District Judge:

Before the Court is defendant's motion to dismiss, ECF No. 33, plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Plaintiff brings this action against defendant United States of America under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671–80, alleging medical malpractice.[2] For the reasons stated below, defendant's motion is **GRANTED.**

---

[1] The Court hereinafter refers to the Memorandum of Law in Support of Defendant's Motion to Dismiss the Amended Complaint, ECF No. 33-1, as the "Motion"; Plaintiff's Response in Opposition to Defendant's Motion, ECF No. 35, as the "Opposition"; and the Reply Memorandum of Law in Further Support of Defendant's Motion to Dismiss the Amended Complaint, ECF No. 36, as the "Reply."

[2] Plaintiff has a separate FTCA case before this Court, *Levinson v. United States*, No. 23-cv-05598 (E.D.N.Y. filed July 24, 2023) ("*Levinson II*"). The Court hereinafter refers to the instant action as "*Levinson I*."

## BACKGROUND

Plaintiff Nikolay Levinson was formerly incarcerated at the Metropolitan Detention Center ("MDC"), in Brooklyn, New York. *See* Am. Compl. ("AC") 5,[3] ECF No. 27. On December 4, 2021, while sitting in a chair in his cell, plaintiff "leaned over to grab something" and "cracked" his left ribcage on the chair's armrest. AC 5. After the incident plaintiff "filled out a sick call request," and was called to the medical unit on December 14. AC 5. Dr. Joaquin, the Federal Bureau of Prisons ("BOP") clinician who examined plaintiff, gave plaintiff ibuprofen and scheduled an x-ray. AC 5. Two days later plaintiff underwent the x-ray, and the next day plaintiff had a follow-up with Dr. Joaquin, who informed plaintiff that "there were no injuries shown on [the] x-ray." AC 5.

Plaintiff was transferred to a different facility before his release from prison in April 2022. AC 5. Upon his release, plaintiff received his medical files which stated that he "ha[d] a slight displaced fracture on the 9 and 10 ribcage." AC 5. Plaintiff—who has "chronic pain in [his] left ribcage"—eventually "saw an independent medical expert" who examined plaintiff and "report[ed] that there was a fractured ribcage, delay in treatment," and that plaintiff's ribcage "healed incorrectly." AC 6. According to plaintiff, Dr. Joaquin was "suppose[d] to send [plaintiff] for surgery to correct the displacement within seven days after [the] x-ray." AC 5.

On June 26, 2023, plaintiff proceeding *pro se* filed the instant action, asserting claims against defendant, the BOP, and the MDC for alleged negligence and medical malpractice pursuant to the FTCA in connection with the chair incident. *See generally* Compl., ECF No. 1. Defendant, the BOP, and the MDC moved to dismiss plaintiff's

---

[3]   Throughout this opinion, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

complaint, arguing that it should be dismissed for lack of subject matter jurisdiction "insofar as th[e] FTCA suit [wa]s asserted against BOP and the MDC." Mem. of Law in Supp. of Defs.' Mot. to Dismiss 6, ECF No. 19-1. Defendant, the BOP, and the MDC also moved to dismiss for failure to state a claim, arguing that plaintiff "fail[ed] to allege what standard of care was violated at the MDC, how it was violated, who violated it, or how that purported violation proximately caused him any injury." Mem. of Law in Supp. of Defs.' Mot. to Dismiss 6–7, ECF No. 19-1.

On September 5, 2024, the Court granted the motion and dismissed plaintiff's complaint without prejudice. *See generally* Memorandum & Order ("M&O"), ECF No. 24. The Court first dismissed plaintiff's claims as alleged against the BOP and MDC because, as federal agencies, they were "improper defendants in an FTCA action." M&O 6. Next, the Court dismissed plaintiff's negligence claim for lack of subject matter jurisdiction. *See* M&O 8. Specifically, the Court explained that "[i]n order to bring an FTCA claim, a plaintiff must exhaust all administrative remedies before filing a complaint in federal district court." M&O 6 (quoting *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005)). And because plaintiff "failed to sufficiently allege administrative exhaustion of his negligence claim," the Court lacked subject matter jurisdiction over that claim. M&O 8. Finally, the Court found that plaintiff failed to state a claim for medical malpractice because (1) "plaintiff's complaint fail[ed] to establish that any treatment decision was a deviation or departure from accepted medical practice"; and (2) "plaintiff d[id] not allege facts to support the proximate cause requirement." M&O 9–10.

Plaintiff filed an amended complaint one month later. *See generally* AC. In his amended complaint, plaintiff dropped his negligence claim but reprised his malpractice

3

claim as against defendant on the basis of Dr. Joaquin's actions. AC 5. Plaintiff seeks $400,000 in compensatory damages for the "fracture healed with a displacement," that causes plaintiff "pain on the left side of [his] ribcage all the time." AC 6. Additionally, in response to defendant's request for a pre-motion conference on its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), plaintiff filed the report from the "independent medical examiner." AC 6; *see also* Exhibit, Urgent Care ("Medical Report"), ECF No. 32.[4] The one-page report is from a clinic located in Cliffside Park, New Jersey, and reflects an examination of plaintiff soon after the Court's M&O, on September 18, 2024. *See* Medical Report 1. The "History / Prelim Diagnosis" section of the report states: "LT sided rib pain, previous displaced fx of the 9th and 10th in 2021." Medical Report 1. The report goes on to state that "[t]here is no evidence of acute rib fractures or other rib cage abnormalities[,]" and that "[n]o acute rib fractures" were seen. Medical Report 1.

## LEGAL STANDARD

When deciding a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014).[5] Factual disputes are typically not the subject of the Court's analysis, as Rule 12 motions "probe the legal, not the factual, sufficiency of a complaint." *Plastic Surgery Grp., P.C. v. United Healthcare Ins. Co. of N.Y., Inc.*, 64 F. Supp. 3d 459, 468–69 (E.D.N.Y. 2014).

---

[4]   In considering the motion to dismiss, the Court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

[5]   Throughout this opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

4

That is, "the issue" on a motion to dismiss "is not whether a plaintiff will ultimately prevail" but instead whether a plaintiff is "entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012).

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Although the Court takes all factual allegations contained in the complaint as true, it does not do so for legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" in a complaint. *Iqbal*, 556 U.S. at 678.

The Court "liberally construe[s] pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin v. United States,* 478 F.3d 489, 491 (2d Cir. 2007)).

## DISCUSSION

### I.   Medical Malpractice

The FTCA "is the exclusive means for recovering damages against a federal agency for common law tort claims." *Murdock v. Microsoft Corp.*, No. 15-cv-03583, 2015 WL 5460190, at *4 n.6 (S.D.N.Y. Aug. 19, 2015) (quoting *Cziko v. U.S. Postal Serv.*, 79 F. App'x 468, 468 (2d Cir. 2003)); *see also U.S. v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 807 (1984) ("The Federal Tort Claims Act, 28

5

U.S.C. § 1346(b), authorizes suits against the United States for damages[.]")."State law is the source of substantive liability under the FTCA." *Gonzalez v. United States*, 80 F.4th 183, 193 (2d Cir. 2023) (quoting *Corley v. United States*, 11 F.4th 79, 85 (2d Cir. 2021)). That is, in an FTCA action, "courts are bound to apply the law of the state where the tort occurred." *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021). Accordingly, because plaintiff's medical malpractice claim arises from conduct occurring at the MDC, located in New York State, New York law governs his claims. *See* M&O 9.

To state a claim for medical malpractice under New York law, a plaintiff must allege "a deviation from the community standards of practice that proximately caused [plaintiff's] injuries." *Solomon v. St. Joseph Hosp.*, 62 F.4th 54, 61 (2d Cir. 2023); *see also Ongley v. St. Luke's Roosevelt Hosp. Ctr.*, 725 F. App'x 44, 46 (2d Cir. 2018) (summary order) ("Under New York law, the essential elements of medical malpractice are (1) a deviation or departure from accepted medical practice, and (2) evidence that such departure was a proximate cause of injury."). It is well-established that the general standard of practice for physicians in New York requires that the medical provider "exercise that reasonable degree of learning and skill that is ordinarily possessed by practitioners in the locality where he practices." *Butler v. United States*, No. 20-cv-10044, 2023 WL 5664216, at *16 (S.D.N.Y. Sept. 1, 2023). Moreover, "boilerplate statements that . . . defendant[] deviated from the acceptable standards of medical care," and that those "acts were the direct and proximate cause of plaintiff's injury, are not sufficient to state a claim." *Isaac v. City of New York*, No. 17-cv-01021, 2018 WL 1322196, at *8 (S.D.N.Y. Mar. 13, 2018).

Defendant argues that plaintiff's amended complaint fails to remedy any of the deficiencies originally identified by the Court in its prior M&O. *See* Mot. 13. Specifically,

6

defendant argues that plaintiff still "fails to allege what the deviation from accepted medical practice was with respect to the treatment he received for his rib." Mot. 9–10. Defendant further argues that plaintiff still does not connect "any purported failure to provide treatment or surgery following his x-ray . . . to any injury." Mot. 10.

Plaintiff's amended complaint still fails to state a claim for medical malpractice. To begin, plaintiff once again does not plausibly "explain how any lack of treatment after his X-ray was out of line with any community standard of care." M&O 9 (quoting *Valentine v. Lindsay*, No. 10-cv-00868, 2011 WL 3648261, at *9 (E.D.N.Y. Aug. 17, 2011)). Plaintiff's conclusory assertion that defendant "was suppose[d] to send [him] for surgery to correct the displacement within seven days after [the] x-ray[,]" AC 5, is unsupported by any facts which could make that conclusion plausible. For instance, as the Court previously explained, "plaintiff does not allege that, after a patient is diagnosed with a displaced rib fracture, surgery is the accepted medical practice." M&O 9. Plaintiff's failure to plausibly "allege how the failure to receive medical care . . . constitutes a deviation from accepted medical care" is fatal to his claim. *Carter v. United States*, No. 22-cv-06715, 2024 WL 1345313, at *9 (E.D.N.Y. Mar. 29, 2024).

To the extent plaintiff argues that defendant deviated from accepted medical practice by "delay[ing] . . . treatment," this too is unavailling. AC 6. At the outset, it's unclear which alleged "delay" in treatment the amended complaint refers to: the time between when plaintifff "filled out a sick call request" and when he was called in for an examination, or the time between plaintiff's x-ray and when he alleges he should have been sent "for surgery to correct the displacement." *See* AC 5. In either scenario, plaintiff fails to allege any facts indicating that the timing of the treatment "he received for his . . . injury fell below the standard of care in the locality where he received treatment." *Rivera*

7

*v. Fed. Bureau of Prisons*, No. 17-cv-05103, 2018 WL 11312146, at *14 (S.D.N.Y. Dec. 14, 2018), *report and recommendation adopted in part*, 368 F. Supp. 3d 741 (Mar. 15, 2019).

The Medical Report plaintiff received from the "independent medical expert" in 2024 does not compel a different conclusion. *See* AC 6. Indeed, contrary to plaintiff's allegation, the report does not state that there was a "delay in [plaintiff's] treatment." AC 6. In fact, the report says nothing of the timing of plaintiff's previous treatment whatsoever. *See generally* Medical Report; *see also Press v. Primavera*, 685 F. Supp. 3d 216, 223 (S.D.N.Y. 2023) (quoting *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 48 (S.D.N.Y. 2019)) ("[W]hen any allegations contradict the evidence contained in the documents relied upon by a plaintiff, the documents control, and the Court need not accept the allegations contained within the complaint as true.").

Furthermore, even if plaintiff plausibly alleged that defendant deviated from community standards of care, his malpractice claim must still be dismissed because he "does not allege facts to support the proximate cause requirement." M&O 10. Under New York law, "a defendant's negligence qualifies as a proximate cause where it is a substantial cause of the events which produced the injury." *Costin v. Glens Falls Hosp.*, No. 22-cv-00296, 2024 WL 4979175, at *5 (N.D.N.Y. Dec. 4, 2024) (quoting *Mazella v. Beals*, 27 N.Y.3d 694, 706 (2016)) (medical malpractice claim); *see also Malone v. Kim*, 947 N.Y.S.2d 58, 59 (1st Dep't 2012) ("To constitute proximate cause, the physician's negligence must be a substantial factor in causing the injury."). By contrast, "[p]roximate cause will be found lacking where the original negligent act merely furnished the occasion for," but did not cause, the events which produced the injury. *Junger v. Singh*, 393 F. Supp. 3d 313, 323 (W.D.N.Y. 2019).

8

Plaintiff again fails to allege facts which would allow the Court to infer "that any medical professional's deviation from accepted medical practice caused his injuries." M&O 10. Though plaintiff alleges throughout his complaint that he has "chronic pain" in his left ribcage, he fails to allege facts demonstrating "a causal nexus" between the alleged deviation and chronic pain. *See Vivar v. City of New York*, No. 18-cv-05987, 2020 WL 1505654, at *14 (S.D.N.Y. Mar. 30, 2020). Indeed, plaintiff alleges no facts supporting the inference that defendant's treatment proximately caused plaintiff's chronic pain as opposed to, for example, the fact that plaintiff "cracked" his left ribcage in 2021. *See* AC 5. And plaintiff's allegation that his ribcage "healed incorrectly" is plainly without merit. AC 5. Indeed, the Medical Report on which plaintiff relies states that "[t]here is no evidence of acute rib fractures or other rib cage abnormalities." Medical Report 1. As such, plaintiff's allegation that defendant's conduct caused his injuries "is especially implausible" in light of this report and the lack of non-conclusory allegations in the complaint. *See* M&O 11.

In sum, plaintiff fails to plausibly allege that defendant deviated from accepted medical practice, and fails to plausibly allege that any deviation proximately caused his injuries. Accordingly, defendant's motion to dismiss plaintiff's malpractice claim is granted.

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss is **GRANTED**. Plaintiff's complaint is hereby dismissed. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is respectfully directed to enter judgment, close the case, mail a copy of this Order to plaintiff and to note the mailing on the docket.

**SO ORDERED.**

                                                                       */s/ Natasha C. Merle*
                                                                       NATASHA C. MERLE
                                                                       United States District Judge

Dated:       May 30, 2025
               Brooklyn, New York